**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

UNITED STATES OF AMERICA,

        Plaintiff,

vs.                                     No. CR 11-1862 JB

JUAN GELACIO GUTIERREZ-HERNANDEZ,

        Defendant.

<u>**MEMORANDUM OPINION AND ORDER**</u>

**THIS MATTER** comes before the Court on the Defendant's Sentencing Memorandum, filed October 2, 2011 (Doc. 15).  The Court held a sentencing hearing on December 1, 2011.  The primary issues are: (i) whether the Court should order that Defendant Juan Gelacio Gutierrez-Hernandez' name in the Presentence Report ("PSR"), disclosed September 7, 2011, be corrected to reflect its correct spelling; (ii) whether the Court should downwardly depart on Gutierrez-Hernandez' criminal history category under U.S.S.G. § 4A1.3 based on that category over-representing the seriousness of his offense and his likelihood of committing crimes in the future; (iii) whether the Court should downwardly depart on Gutierrez-Hernandez' offense level under U.S.S.G. §§ 5K2.0 and/or 5H1.4 based on the harsh conditions he has faced in prison; (iv) whether the Court should downwardly depart on his offense level under U.S.S.G. § 5K2.13 based on his limited education and cognitive abilities; and (v) whether the Court should vary downward from the advisory guideline range on Gutierrez-Hernandez' sentence.  The Court will grant in part and deny in part the requests contained in the Sentencing Memorandum.  The Court will order that the spelling of Gutierrez-Hernandez' name in the PSR be corrected.  Because the Court does not believes that Gutierrez-Hernandez' criminal history category substantially over-represents his likelihood to commit future crimes, the

Court will deny the request for a departure under U.S.S.G. § 4A1.3. Because the Court does not believe that the conditions Gutierrez-Hernandez has faced in prison are sufficiently extraordinary to remove his case from the heartland of cases or that he suffers from any extraordinary physical condition, the Court will deny the request for a departure under U.S.S.G. §§ 5K2.0 and/or 5H1.4. Because the Court believes that Gutierrez-Hernandez understood the consequences of his actions in committing this federal offense, the Court will deny the request for a departure under U.S.S.G. § 5K2.13 based on diminished capacity. Because the Court believes that a sentence within the advisory guideline range best reflects the factors in 18 U.S.C. § 3553, the Court will deny the request for a variance.

## <u>PROCEDURAL BACKGROUND</u>

An Indictment filed on July 13, 2011 charges Gutierrez-Hernandez with a violation of 8 U.S.C. § 1326 (a) and (b), that being re-entry of a removed alien. <u>See</u> Doc. 8. On July 22, 2011, Gutierrez-Hernandez pled guilty to this charge before a United States Magistrate Judge. <u>See</u> Plea Minute Sheet, filed July 22, 2011 (Doc. 12).

On October 2, 2011, Gutierrez-Hernandez filed his Sentencing Memorandum. He requests "a two level variance or departure from the applicable offense severity level, from nine to seven, or a one level variance and a one category adjustment of criminal history category." Sentencing Memorandum at 1. Gutierrez-Hernandez "requests that this Court order that his name be corrected" in the PSR in which his name is spelled incorrectly. Sentencing Memorandum at 1. He asks the Court for a sentence that is sufficient but not greater than necessary to accomplish the sentencing goals set out in 18 U.S.C. § 3553(a). <u>See</u> Sentencing Memorandum at 2-4. He relates that he "was brought up in abject poverty, abuse, and neglect." Sentencing Memorandum at 3. He notes that he witnessed numerous incidents where his father abused his mother before she finally fled the home.

<u>See</u> Sentencing Memorandum at 3.  He states that he was "shuttled between [his mother's] home, his paternal grandparents' home, and his father's home."  Sentencing Memorandum at 4.  He asserts that he has no other criminal history besides illegal reentry crimes.  <u>See</u> Sentencing Memorandum at 4.  He argues that a departure on the basis of his diminished capacity is appropriate given his meager educational background and his low intelligence level.  <u>See</u> Sentencing Memorandum at 6. He contends that "[h]is educational neglect has left him both intellectually and economically impoverished, susceptible to peers' influence and unable to fully reason out consequences and alternatives."  Sentencing Memorandum at 6.  He asserts that he "is less capable than a normal person to perceive alternative courses of action to an illegal return."  Sentencing Memorandum at 7. Gutierrez-Hernandez argues that his criminal history category of IV substantially over-represents his level of danger.  <u>See</u> Sentencing Memorandum at 8.  He notes that he "has no arrests other than for immigration offenses."  Sentencing Memorandum at 8.  He contends that "[i]t is extraordinary to place him in this [criminal history] category with the habitual violent criminals and drug traffickers that more typically populate Category IV."  Sentencing Memorandum at 8.  He asserts that, under U.S.S.G. § 5K2.0, he should receive a departure based on the harsh conditions he has faced in prison.  <u>See</u> Sentencing Memorandum at 9.  He recounts that: (i) he often cannot sleep, because of his hard mattress; (ii) he "suffered some form of medical condition that he reported as a pimple from [his] mattress" that was "likely a spider bite or some other skin condition"; and (iii) medicine prison officials gave him for his diabetes "caused him to break out in rashes that were still visible as of September 20, the date the presentence report was reviewed with him."  Sentencing Memorandum at 9.  He argues that, to adequately deter him from future criminal behavior, "extensive incarceration is unnecessary," and that "counseling [him] regarding the consequences of returning and the need to attempt to apply critical thinking skills to any suggestion that he return

would be more effective." Sentencing Memorandum at 10-11. He notes that he poses a low danger to others. See Sentencing Memorandum at 11. He specifically requests a sentence of 8-months imprisonment. See Sentencing Memorandum at 12.

On October 7, 2011, Plaintiff United States of America filed its Response to Defendant's Sentencing Memorandum. See Doc. 17 ("Response"). The United States asserts that a sentence below the advisory guideline range would not be appropriate in his case. See Response at 2. It argues that "Congress has demonstrated that it views the crime of illegal re-entry as serious, not merely regulatory, by imposing a penalty of up to twenty years in prison." Response at 3. The United States contends that Gutierrez-Hernandez' personal history and characteristics do not distinguish his case from the heartland of cases. See Response at 3. The United States notes that Gutierrez-Hernandez "is unable to reference any controlling authority for the proposition that a lack of formal education" is a basis for a downward departure for diminished capacity. Response at 3. The United States contends that Gutierrez-Hernandez acknowledged in his written acceptance of responsibility that he understood he was not supposed to reenter the United States. See Response at 4.

On October 17, 2011, Gutierrez-Hernandez filed his Reply to Response to Sentencing Memorandum. See Doc. 18 ("Reply"). He asserts that his low level of intellectual skills limits his capability to reason and to appreciate the wrongfulness of his behavior. See Reply at 1-2. He concedes that he is not arguing that he suffers from any mental illness. See Reply at 2. He notes that U.S.S.G. § 5H1.4 permits departures based on a defendant's physical condition. See Reply at 2-3. He emphasizes that, unlike many defendants in his situation, all of his contacts with immigration authorities resulted in criminal prosecutions. See Reply at 3. Thus, he argues, his criminal history category over-represents his danger. See Reply at 3. On October 21, 2011, the

parties filed the Defendant's Waiver of Appeal Rights and Post-Conviction Challenges to Sentence at 1-2, filed October 21, 2011 (Doc. 21)("Waiver").  In this Waiver, Gutierrez-Hernandez agreed to waive his "appeal rights and post-conviction challenges" in exchange for an additional 1-level reduction to his offense level.  Waiver at 2.

At the October 19, 2011 sentencing hearing, the Court, pursuant to the parties' agreement, ordered that the spelling of Gutierrez-Hernandez name in the PSR be corrected.  See Transcript of Hearing at 2:25-3:12 (taken October 19, 2011)(Converse, Court, Brawley)("Oct. 19, 2011 Tr.").[1] Gutierrez-Hernandez then attempted to tender his Waiver to the Court.  See Oct. 19, 2011 Tr. at 3:21-24 (Converse).  The Court responded that, if the parties were planning on modifying the plea, they should do so before a United States Magistrate Judge.  See Oct. 19, 2011 Tr. at 3:25-4:5 (Court).

On November 17, 2011, Gutierrez-Hernandez filed his Supplement to Sentencing Memorandum - Appeal Waiver.  See Doc. 24 ("Supplement").  He states that the United States did not offer him a fast-track plea agreement "presumably due to his extensive immigration history, as he has no disqualifying convictions."  Supplement at 1.  He asserts that the Waiver he filed is consistent with the United States Attorney's Office's policy for its fast-track program.  See Supplement at 1-2.  He recognizes that the document which the parties utilized is different from what the parties would normally use pursuant to a 1-level reduction under the fast-track program, but argues that there is no substantive difference.  See Supplement at 2.  He notes that he chose to file the Waiver rather than a plea agreement in part because of his limited reading ability.  See Supplement at 2-3.  He recognizes that he pled guilty without a plea agreement.  See Supplement

---

[1]The Court's citations to the transcripts of the hearings refer to the court reporter's original, unedited versions.  Any final transcripts may contain slightly different page and/or line numbers.

at 1-2.

At the sentencing hearing on November 10, 2011, the Court expressed concern regarding the plea colloquy in front of the Honorable Lorenzo F. Garcia, United States Magistrate Judge, where Assistant United States Attorney Roberto Ortega emphasized that the parties had entered into a plea agreement, in light of the Supplement where Gutierrez-Hernandez disclaimed that the parties had entered into a plea agreement.  See Transcript of Hearing at 2:22-3:17 (taken November 10, 2011)(Court)("Nov. 10, 2011 Tr.").  Gutierrez-Hernandez asserted that it does not matter whether the Waiver is a nonstandard fast-track plea agreement. See Nov. 10, 2011 Tr. at 3:18-20 (Converse). Assistant Federal Public Defender Kari Converse asserted that she has used this form appearing in the Waiver in front of other district court judges without any problems.  See Nov. 10, 2011 Tr. at 4:22-5:6 (Converse).  The parties and the Court then discussed whether this Waiver was an appropriate method by which a defendant could receive an additional 1-level reduction for acceptance of responsibility under the fast-track program.  See Nov. 10, 2011 Tr. at 7:6-11:8 (Converse, Court, Torrez).  The Court also noted that it had received an email from Assistant United States Attorney James D. Tierney stating that this Waiver is a nonstandard fast-track plea agreement. See Nov. 10, 2011 Tr. at 9:25-10:7 (Court).  The Court felt it was necessary to resolve whether this Waiver was a nonstandard fast-track plea agreement before proceeding with sentencing.  See Nov. 10, 2011 Tr. at 13:22-14:12 (Court).  The Court then recessed the sentencing hearing until the parties could resolve this fast-track issue by using a different form or providing the Court with confirmation that the Waiver form is an appropriate form in compliance with the fast-track program.

Gutierrez-Hernandez, pursuant to a Non-Standard Fast Track Plea Agreement, filed November 17, 2011 (Doc. 28)("Plea Agreement"), pled guilty to the Indictment charging him with a violation of  8 U.S.C. § 1326 (a) and (b), that being re-entry of a removed alien.  The parties

agreed to a 2-level reduction pursuant to U.S.S.G. § 3E1.1(a) for acceptance of responsibility and, if Gutierrez-Hernandez' base offense level is at least 16, to an additional 1-level reduction pursuant to U.S.S.G. § 3E1.1(b).  See Plea Agreement ¶ 11, at 4.  The parties agreed, pursuant to the United States Attorney's Office fast-track plea agreement program and U.S.S.G. § 5K3.1, to a 1-level base offense level reduction; in exchange, Gutierrez-Hernandez agreed to waive his appellate rights.  See Plea Agreement ¶¶ 6, 12, at 2, 5; Waiver at 1-2.  The parties reserved the right to "assert any position or argument with respect to the sentence to be imposed" other than with respect to the stipulations contained in the Plea Agreement.  Plea Agreement ¶ 8, at 3-4.

On September 7, 2011, the United States Probation Office ("USPO") disclosed a PSR for Gutierrez-Hernandez.  On October 14, 2011, the USPO disclosed the Re-Disclosed PSR to correct and update some factual information regarding Gutierrez-Hernandez.  After the parties entered into a Plea Agreement, the USPO disclosed the Second Re-Disclosed PSR on November 23, 2011.  The Second Re-Disclosed PSR calculates Gutierrez-Hernandez' adjusted offense level as 12, and his total offense level as 10 after a 2-level reduction for acceptance of responsibility.  See Second Re-Disclosed PSR ¶¶ 17-19, at 5.  Based on the Plea Agreement, the USPO further reduces the total offense level to 9.  See PSR ¶ 20, at 5.  The USPO calculates Gutierrez-Hernandez' criminal history category as IV based on 7 criminal history points.  The USPO calculates that an offense level of 9 and a criminal history category of IV establishes a guideline sentencing range of 12 to 18 months. See PSR ¶ 54, at 13.  There being no disputes about the PSR's factual findings, the Court adopts them as its own.

On October 14, 2011, the USPO disclosed an Addendum to the PSR.  The Addendum addresses Gutierrez-Hernandez' requests for departures.  The USPO concludes that a departure under U.S.S.G. § 5K2.13 based on diminished capacity is not warranted, because he has stated that

he understood his actions were improper.  See Addendum to PSR at 1.  The USPO asserts that a departure on Gutierrez-Hernandez' criminal history category under U.S.S.G. § 4A1.3 is not warranted, because of the number of immigration offenses he has committed and how frequently he has committed them.  See Addendum to PSR at 2.  Regarding a departure under U.S.S.G. § 5H1.4 based on the conditions in prison Gutierrez-Hernandez faces, the USPO recognizes that such departures are disfavored and that no circumstances in this case are sufficiently extraordinary to warrant a departure.  See Addendum to PSR at 2.

At the sentencing hearing on December 1, 2011, Mr. Tierney clarified that other judges are accepting a form similar to the Waiver as proper under the fast-track program.  See Transcript of Hearing at 7:21-24 (taken December 1, 2011)(Court, Tierney)("Dec. 1, 2011 Tr.").  The Court then accepted the Plea Agreement.  See Dec. 1, 2011 Tr. at 10:2-7 (Court).  The parties then agreed to the Court granting a 1-level reduction to Gutierrez-Hernandez' offense level based on the waiver of appellate rights.  See Dec. 1, 2011 Tr. at 10:6-11:3 (Court, Tierney, Converse).  Gutierrez-Hernandez clarified that he wanted an additional 2-level departure or variance on his offense level based on the arguments in his Sentencing Memorandum.  See Dec. 1, 2011 Tr. at 12:8-11 (Court, Converse).  Gutierrez-Hernandez emphasized that he has only had five contacts with immigration officials and has been prosecuted each time, which he asserts is quite uncommon.  See Dec. 1, 2011 Tr. at 12:18-13:11 (Converse).  He asserts that his criminal history category over-represents his dangerousness.  See Dec. 1, 2011 Tr. at 12:23-13:13 (Converse).  The United States noted that this conviction will result in his sixth conviction for an immigration related offense since 2005.  See Dec. 1, 2011 Tr. at 13:17-22 (Torrez).  The United States argued that there is nothing that separates Gutierrez-Hernandez from other defendants who have received multiple illegal reentry convictions in such a short period of time.  See Dec. 1, 2011 Tr. at 14:8-15 (Torrez).  Gutierrez-Hernandez

emphasized that he has no convictions for other crimes, such as drug crimes or violent felonies.  <u>See</u> Dec. 1, 2011 Tr. at 14:18-15:3 (Converse).  The Court then denied the request for a departure under U.S.S.G. § 4A1.3.  <u>See</u> Dec. 1, 2011 Tr. at 15:15-16:17 (Court).  Gutierrez-Hernandez reiterated the difficult conditions he has faced in prison.  <u>See</u> Dec. 1, 2011 Tr. at 16:20-18:8 (Converse).  The United States countered that the conditions Gutierrez-Hernandez has faced in prison are not so extraordinary to warrant a departure.  <u>See</u> Dec. 1, 2011 Tr. at 18:12-19:16 (Torrez).  The Court then denied the request for a departure under U.S.S.G. §§ 5K2.0 and 5H1.4.  <u>See</u> Dec. 1, 2011 Tr. at 20:1-21:10 (Court).  Gutierrez-Hernandez argued that his rough upbringing and lack of education justify a downward departure under U.S.S.G. § 5K2.13 based on diminished capacity.  <u>See</u> Dec. 1, 2011 Tr. at 21:13-22:23 (Converse).  The United States asserted that there is no factual or legal basis for a departure under this guideline under these circumstances.  <u>See</u> Dec. 1, 2011 Tr. at 23:1-21 (Torrez).  The Court then denied the request for a departure under U.S.S.G. § 5K2.13.  <u>See</u> Dec. 1, 2011 Tr. at 24:5-25:18 (Court).  Gutierrez-Hernandez stated that, if the Court chooses not to vary, he would request a sentence of 12 months and 1 day to receive additional good time credit.  <u>See</u> Dec. 1, 2011 Tr. at 28:1-7 (Converse).  The United States agreed that a sentence of 12 months and 1 day would be appropriate.  <u>See</u> Dec. 1, 2011 Tr. at 29:12-17 (Converse).

## LAW REGARDING U.S.S.G. § 5K2.13

U.S.S.G. § 5K2.13 provides the following policy statement:

> A downward departure may be warranted if (1) the defendant committed the offense while suffering from a significantly reduced mental capacity; and (2) the significantly reduced mental capacity contributed substantially to the commission of the offense.  Similarly, if a departure is warranted under this policy statement, the extent of the departure should reflect the extent to which the reduced mental capacity contributed to the commission of the offense.
>
> However, the court may not depart below the applicable guideline range if (1) the significantly reduced mental capacity was caused by the voluntary use of

drugs or other intoxicants; (2) the facts and circumstances of the defendant's offense indicate a need to protect the public because the offense involved actual violence or a serious threat of violence; (3) the defendant's criminal history indicates a need to incarcerate the defendant to protect the public; or (4) the defendant has been convicted of an offense under chapter 71, 109A, 110, or 117, of title 18, United States Code.

U.S.S.G. § 5K2.13.  Application note 1 to U.S.S.G. § 5K2.13 provides that, for purposes of this policy statement, "'significantly reduced mental capacity' means the defendant, although convicted, has a significantly impaired ability to (A) understand the wrongfulness of the behavior comprising the offense or to exercise the power of reason; or (B) control behavior that the defendant knows is wrongful." U.S.S.G. § 5K2.13 cmt n.1.  Diminished capacity is an "encouraged" factor -- a specific factor provided by the Commission "'to aid the court by identifying some of the factors that the Commission has not been able to take into account fully in formulating the guidelines.'"  United States v. Neal, 249 F.3d 1251, 1256 (10th Cir. 2001)(citing U.S.S.G. § 5K2.0).  In the case of an encouraged factor, "the court is authorized to depart if the applicable Guideline does not already take it into account."  United States v. Neal, 249 F.3d at 1256.  Accord United States v. Trejo-Lara, No. 07-1456, 2008 WL 2397672, at *2 (D.N.M. Jan. 30, 2008)(Browning, J.).

## ANALYSIS

The Court will order that the spelling of Gutierrez-Hernandez' name in the PSR be corrected. Because the Court does not believes that Gutierrez-Hernandez' criminal history category substantially over-represents his likelihood to commit crimes in the future, the Court will deny the request for a departure under U.S.S.G. § 4A1.3.  Because the Court does not believe that the conditions Gutierrez-Hernandez has faced in prison are sufficiently extraordinary to remove his case from the heartland of cases or that he suffers from any extraordinary physical condition, the Court will deny the request for a departure under U.S.S.G. §§ 5K2.0 and/or 5H1.4.  Because the Court

-10-

believes that Gutierrez-Hernandez understood the consequences of his actions in committing this federal offense, the Court will deny the request for a departure under U.S.S.G. § 5K2.13 based on diminished capacity.  Because the Court believes that a sentence within the advisory guideline range best reflects the factors in 18 U.S.C. § 3553, the Court will deny the request for a variance.

I.      **THE COURT WILL ORDER THAT GUTIERREZ-HERNANDEZ' NAME BE CORRECTED IN THE PSR.**

Gutierrez-Hernandez "requests that this Court order that his name be corrected" in the PSR, because the PSR does not spell his name correctly.  Sentencing Memorandum at 1.  At the sentencing hearing on October 19, 2011, the United States asserted that it did not oppose the correction of Gutierrez-Hernandez' name.  See Oct. 19, 2011 Tr. at 2:25-3:12 (Converse, Court, Brawley).  Because the parties do not oppose the correction and the Court agrees that the correction is necessary, the Court orders that the spelling of his name in the PSR be corrected to Juan Gelacio Gutierrez-Hernandez.

II.     **THE COURT WILL NOT DOWNWARDLY DEPART ON GUTIERREZ-HERNANDEZ' CRIMINAL HISTORY.**

U.S.S.G. § 4A1.3(b)(1) provides: "Standard for Downward Departure. -- If reliable information indicates that the defendant's criminal history category substantially over-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes, a downward departure may be warranted." U.S.S.G. § 4A1.3(b)(1).  With a departure under U.S.S.G. § 4A1.3, "[a]s with all departure decisions, the district court should consider all of the factual circumstances that bear upon a defendant's criminal history and likelihood for recidivism." United States v. Caldwell, 219 F.3d 1186, 1192 (10th Cir. 2000).

The Court believes that the high likelihood of recidivism counsels against a departure on Gutierrez-Hernandez' criminal history category.  This conviction will be his sixth immigration

conviction since 2005.  See PSR ¶¶ 22-26, at 5-8.  While Gutierrez-Hernandez has not committed

a particularly serious crime in comparison to some of the crimes the Court sees, a court should also

consider a defendant's likelihood of recidivism.  See United States v. Caldwell, 219 F.3d at 1192.

Although the guidelines authorize a departure when the criminal history category substantially over-

represents a defendant's criminal history or the likelihood that he will commit crimes in the future,

the Court does not believe a departure is warranted.  There is no dispute that the USPO accurately

calculated his criminal history, and the number of crimes he has committed justify a criminal history

category of IV.  The Court has trouble squaring his lengthy criminal history with the proposition that

he will not come to the United States again.  The Court cannot say that a criminal history category

IV overstates his criminal history.  He has reached a criminal history category of IV faster than

many defendants who have appeared before the Court.  That fact leads the Court to believe that there

is a high likelihood that he will commit crimes in the future.  See U.S.S.G. § 4A1.3(b)(1).  Those

circumstances counsel against a departure.  The Court chooses not to depart, because it does not

believe a departure is warranted under the facts and circumstances here.  While the Court has some

ability to qualitatively distinguish a crime such as illegal reentry from a crime like murder,

Gutierrez-Hernandez' high rate of recidivism counsels against a departure in this case.

Unfortunately, the federal prisons contain many inmates whose criminal history consists largely of

illegal reentry offenses.  The Court has trouble distinguishing his case from those of other

defendants that appear before the Court in such a way that would justify a downward departure

under U.S.S.G. § 4A1.3; the Court believes that Gutierrez-Hernandez remains comfortably within

a criminal history category of IV.  Consequently, the Court will deny the request for a downward

departure under U.S.S.G. § 4A1.3.  Even if the Court concluded that a departure was warranted, it

would exercise its discretion not to depart, as it does not feel that Gutierrez-Hernandez'

circumstances fall outside the heartland of cases involving a criminal history category of IV.

**III.   THE COURT WILL NOT DOWNWARDLY DEPART ON GUTIERREZ-HERNANDEZ' OFFENSE LEVEL BASED ON THE CONDITIONS THAT HE HAS FACED IN PRISON.**

U.S.S.G. § 5K2.0(a)(2)(B) provides: "A departure may be warranted in the exceptional case in which there is present a circumstance that the Commission has not identified in the guidelines but that nevertheless is relevant to determining the appropriate sentence." U.S.S.G. § 5K2.0(a)(2)(B). In most cases, "departures based on grounds not mentioned in the Guidelines will be highly infrequent." Koon v. United States, 518 U.S. 81, 95-96 (1996). Although such departures under U.S.S.G. § 5K2.0 may be infrequent, unusual circumstances may be sufficiently extraordinary that they are accepted as a basis for departure and thereby become relevant to sentencing. See Koon v. United States, 518 U.S. at 95-96. The Sentencing Commission has advised courts in applying departures:

> The Commission intends the sentencing courts to treat each guideline as carving out a "heartland," a set of typical cases embodying the conduct that each guideline describes. When a court finds an atypical case, one to which a particular guideline linguistically applies but where conduct significantly differs from the norm, the court may consider whether a departure is warranted.

U.S. Sentencing Manual ch. 1 pt. A.4(a), at 6 (2011). Under U.S.S.G. § 5H1.4, while physical condition is normally not relevant in determining whether to depart from the Guidelines, "an extraordinary physical impairment may be a reason to depart downward." U.S.S.G. § 5H1.4.

While a downward departure is authorized under both U.S.S.G. §§ 5K2.0 and 5H1.4, the facts and circumstances of this case do not warrant a departure. Departures under both of these guidelines are generally disfavored. The Court sees no extraordinary physical impairment or shocking conditions Gutierrez-Hernandez faced while he was in prison that separate his case from the heartland of cases. Life in prison is often difficult for defendants, and many of them complain

about the conditions they face there.  Prison is not designed to be an enjoyable place.  While the

Court recognizes that people are entitled to live at a certain level of decency in prisons in this

country, Gutierrez-Hernandez has not articulated any unusual conditions he faces while in prison

that justify a departure in this case.  Furthermore, he appears to have no physical impairment that

would support a departure under U.S.S.G. § 5H1.4.  The Court has trouble squaring the conditions

Gutierrez-Hernandez faces in prison and his physical condition with those the Court has seen in

other cases that would take his case out of the heartland of cases.  In any case, the Court chooses not

to depart, because it does not believe a departure is warranted under the facts and circumstances.

Unfortunately, prisons are not comfortable and in some cases cause physical ailments to prisoners.

The Court has trouble distinguishing Gutierrez-Hernandez' case from many others the Court and

the federal courts see; the case remains comfortably within the heartland of cases.  Even if a

departure were warranted under the facts here, the Court would exercise its discretion not to depart,

because the Court concludes that there is nothing in this case distinguishing it from the heartland

of cases.

## IV.    THE COURT WILL NOT DOWNWARDLY DEPART ON GUTIERREZ-HERNANDEZ' OFFENSE LEVEL BASED ON DIMINISHED CAPACITY.

U.S.S.G. § 5K2.13 provides in part:

> A downward departure may be warranted if (1) the defendant committed the
> offense while suffering from a significantly reduced mental capacity; and (2) the
> significantly reduced mental capacity contributed substantially to the commission of
> the offense.  Similarly, if a departure is warranted under this policy statement, the
> extent of the departure should reflect the extent to which the reduced mental capacity
> contributed to the commission of the offense.

U.S.S.G. § 5K2.13.  Application note 1 to U.S.S.G. § 5K2.13 provides that, for purposes of this

policy statement, "'significantly reduced mental capacity' means the defendant, although convicted,

has a significantly impaired ability to (A) understand the wrongfulness of the behavior comprising

the offense or to exercise the power of reason; or (B) control behavior that the defendant knows is wrongful."  U.S.S.G. § 5K2.13 cmt n.1.

While the Court recognizes there may be grounds for a departure under this guideline in cases of a defendant having serious intellectual limitations, such as mental retardation, see United States v. Jones, 42 F.App'x 879, 881-82 (7th Cir. 2002)(unpublished)("Whether departure is permissible under § 5K2.13 depends on a case-by-case determination . . . and we can easily imagine a situation where mental retardation would qualify."), the Court does not believe that the facts presented in this case warrant such a departure.  The Court sympathizes with Gutierrez-Hernandez' difficult upbringing and his lack of education.  He may also be an impulsive person who does not always think before he acts.  The record as presented to the Court, however, indicates that, at the time Gutierrez-Hernandez' committed the offense, he was not operating under diminished capacity as the guidelines interpret that phrase.  It appears he could understand the wrongfulness of his behavior, could exercise the power of reason when he committed the offense, and could control behavior he knew was wrong.  The Court finds it noteworthy that, in his written statement accepting responsibility, he acknowledges the wrongfulness of his conduct and that he knew it was wrong at the time he engaged in that conduct.  See PSR ¶ 10, at 3 ("I should have not let [my friends] talk me into this, because I knew I was not supposed to come back, and I apologize to the Court for my actions.").  The Court deals with many defendants who have less education than they would like and who have trouble controlling their impulses.  Gutierrez-Hernandez does not appear to have the level of intellectual deficiencies, such as mental retardation, that would warrant a departure under this guideline.  The Court is having trouble squaring his allegations of diminished capacity with many other facts and circumstances in his life, including his numerous reentries into the country.  Such reentries generally require some skill and planning to avoid detection.  In any

-15-

case, the Court chooses not to depart, because it does not believe that a departure is warranted under the facts and circumstances here.  Unfortunately, the federal prisons contain many inmates who have little formal education.  The Court has trouble distinguishing this case from many others.  The case fits comfortably within the heartland of cases.  Moreover, even if the Court concluded that a departure were warranted under this guideline, the Court would exercise its discretion not to depart, because it does not believe that Gutierrez-Hernandez' case falls outside the heartland of cases.

## V.      THE COURT WILL DENY A REQUEST FOR A VARIANCE FROM THE ADVISORY GUIDELINE RANGE.

Pursuant to rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure and U.S.S.G. § 5K3.1 of the sentencing guidelines, the Court accepts the plea agreement, which stipulates to an offense level of 9.  The Court is satisfied that the agreed-on offense level departs for justifiable reasons.  The plea agreement is pursuant to a nonstandard fast-track plea agreement.  In section 401(m)(2)(B) of the PROTECT Act of 2003, Pub. L. No. 109-21, § 401(m)(2)(B), 117 Stat. 650, 675, Congress approved early disposition or fast-track programs if certain conditions are met.  The Court believes that these conditions are met in this case, and this departure is in the lower part of the range of departures that Congress allowed.  The Court's sentence will be consistent with the Plea Agreement.  The Court adopts the sentencing calculations in the Second Re-Disclosed PSR as its own.  An offense level of 9 combined with a criminal history category of IV establishes a guideline imprisonment range of 12 to 18 months.

The Court notes that Gutierrez-Hernandez illegally re-entered the United States subsequent to a felony conviction.  The Court has carefully considered the parties' arguments and the circumstances of this case.  The Court has considered the guideline range for the applicable category of offense committed by the applicable category of defendant.  The Court believes that the

punishment that the guidelines set forth near the bottom of the advisory guideline range is appropriate for Gutierrez-Hernandez' offense.  The Court believes that a sentence of 12 months and 1 day is sufficient to reflect the seriousness of this offense.

The Court has considered the guidelines, but, in arriving at its sentence, has taken into account not only the guidelines but other sentencing goals.  This sentence adequately reflects the seriousness of the offense, promotes respect for the law, provides just punishment, affords adequate deterrence, protects the public, avoids unwarranted sentencing disparities among similarly situated defendants, and otherwise fully reflects each of the factors embodied in 18 U.S.C. § 3553(a).  This sentence is slightly higher than the last sentence Gutierrez-Hernandez received for illegal reentry -- 12-months imprisonment -- so the Court believes the sentence reflects the seriousness of his repeated violations.  Additionally, because the sentence is within the advisory guideline range, the Court also believes that the sentence reflects the seriousness of the offense.  That the sentence is within the advisory guideline range also helps promote respect for the law and to provide just punishment.  It is certainly necessary to promote respect for the law when the a court deals with defendants who continue to commit the same crime.  That circumstance is one reason the Court declined to grant a variance in this case.  The Court recognizes the necessity of adequately deterring Gutierrez-Hernandez specifically and members of the public generally who continue to commit the same type of offense.  Recurrent criminal behavior is a serious problem.  The Court believes that this sentence accomplishes the goal of affording adequate deterrence.  Given that Gutierrez-Hernandez has not committed any violent crimes in his past, the Court does not believe that there is a need to emphasize the factor of protecting the public.  Because the sentence is within the advisory guideline range, the Court believes that the sentence avoids unwarranted sentencing disparities among similarly situated defendants.  While the Court's task, as a district court, is not

-17-

to arrive at a reasonable sentence -- it is to come up with one that reflects the factors in 18 U.S.C. § 3553(a), see United States v. Conlan, 500 F.3d 1167, 1169 (10th Cir. 2007)("[A] district court's job is not to impose a reasonable sentence. Rather, a district court's mandate is to impose a sentence sufficient, but not greater than necessary, to comply with the purposes of section 3553(a)(2)." (citation omitted)) -- the Court believes this sentence is reasonable. And perhaps most important in this calculation, the Court believes that this sentence is sufficient, but not greater than necessary to comply with the purposes of punishment Congress set forth in the Sentencing Reform Act of 1984, Pub. L. No. 98-473, 98 Stat. 1987 (codified as amended in scattered sections of 18 U.S.C.). The Court sentences Gutierrez-Hernandez to 12-months-and-1-day imprisonment.

The Court has some concern about sentencing Gutierrez-Hernandez to 12 months and 1 day, because doing so will allow him to receive credit for time served and good time credit and ultimately serve a sentence of roughly 10 and a half months, even though his last sentence was 12 months. This slight differential, however, is attributable in part to the fact that the Plea Agreement is part of the United States Attorney's fast-track program. He received his previous 12-month sentence in the Western District of Texas, which does not have a fast-track program. To start sentencing Gutierrez-Hernandez further up the guideline range begins to take away the benefit of the Plea Agreement, which the Court is reluctant to do. Such a move undermines the utility of the fast-track program and limits the usefulness of plea agreements to the parties. To impose a more significant sentence would be to deviate from the Court's practice of usually giving defendants credit for time served. A higher sentence would being to introduce unwarranted sentencing disparities among defendants with similar records who are convicted of similar offenses. The Court concludes that a sentence of 12 months and one day is an appropriate sentence for Gutierrez-Hernandez, and the United States concurs.

-18-

**IT IS ORDERED** that the requests for departures and a variance in the Defendant's

Sentencing Memorandum, filed October 2, 2011 (Doc. 15), are granted in part and denied in part.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Kenneth J. Gonzales
  United States Attorney
Raul Torrez
  Assistant United States Attorneys
Albuquerque, New Mexico

      *Attorneys for the Plaintiff*

Kari Converse
  Assistant Federal Public Defender
Federal Public Defender's Office
Albuquerque, New Mexico

      *Attorney for the Defendant*